UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X          Case No.
YOSLY L. ORDONEZ,

                       Plaintiff,                                    **COMPLAINT**

     -against-
                                                                         **Jury Trial Demanded**

CORESTAFF SUPPORT SERVICES, INC.,
THE BARTECH GROUP, INC., CORPORATE
EMPLOYMENT RESOURCES, INC. and
MAXIMUS INC.,

                       Defendants.
--------------------------------------------------------------X

       Plaintiff Yosly L. Ordonez ("Ordonez") alleges against the Defendants Corestaff Support

Services, Inc. ("Corestaff"), the Bartech Group, Inc., Corporate Employment Resources, Inc. and

Maximus, Inc. ("Maximus") (collectively "Defendants"), upon information and belief, as

follows:

## NATURE OF THE CLAIMS

1. Plaintiff Ordonez brings this action against the Defendants pursuant to Title VII of the Civil

   Rights Act of 1964, 42 U.S.C. §§2000e, *et seq*. ("Title VII"), Americans with Disabilities

   Act, 42 U.S.C.S. § 12101 *et seq*. ("ADA"), the New York State Human Rights Law, N.Y.

   Exec. Law §§ 290, *et seq*. ("NYSHRL") and the New York City Human Rights Law, N.Y.C.

   Admin. Code § 8-101 et seq. ("NYCHRL") to recover the damages she sustained as the result

   of being discriminated against, subjected to a hostile work environment and retaliated against

   on the basis of her sex, pregnancy and familial status.

1

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over Plaintiff's claims under Title VII and ADA against Corestaff and Maximus pursuant to 28 U.S.C. § 1331 and 1343, because those claims arise under the laws of the United States.   This Court has supplemental subject matter jurisdiction over Plaintiff's related NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1367.

3. The Court additionally has diversity jurisdiction over this case pursuant to 28 U.S.C. § 1332 because Plaintiff is a citizen of New York, the Defendant Corestaff is incorporated in California, the Defendant Corporate Employment Resources, Inc. is incorporated in Delaware, the Defendant Maximus is incorporated in Virginia, and the Bartech Group, Inc.'s principal place of business is Michigan, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

4. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, occurred in this district.

5. On January 29, 2021, Plaintiff Ordonez filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC") against the Defendant Corestaff (Federal Charge No. 520-2021-01812) and Maximus (Federal Charge No. 520-2021-01814). On July 13, 2021 and July 15, 2021, EEOC issued Plaintiff Notices of Right to Sue with regard to Maximus and Corestaff respectively (annexed hereto as **Exhibit A** and **Exhibit B**).

6. Plaintiff has exhausted administrative remedies against Corestaff and Maximus, and any and all other prerequisites to the filing of this suit have been met.

## THE PARTIES

7.   Plaintiff Ordonez resides in the Bronx County, in the State of New York.

8.   Corestaff is a foreign corporation organized and existing under and by virtue of the laws of the State of California.

9.   Corestaff was and is a foreign business corporation authorized to conduct business in the State of New York.

10. Corestaff has a registered agent, Corporation Service Company, located at 80 State Street, Albany, New York, 12207-2543.

11. Corestaff's principal executive office is located at 3475 Lenox Road NE, Suite 450 Atlanta, Georgia, 30326.

12. Corestaff was Plaintiff's "employer" within the meaning of Title VII, ADA, NYSHRL and NYCHRL.

13. Corestaff provides staffing services in the New York City metro area.

14. Corestaff, through its agents and employees, controlled the terms and conditions of Plaintiff's employment.

15. Maximus is a foreign business corporation organized and existing under and by virtue of the laws of the State of Virginia.

16. Maximus was and is a foreign business corporation authorized to conduct business in the State of New York.

17. Maximus' principal executive office is located at 1891 Metro Center Drive Reston, Virginia, 20190.

18. Maximus operates an office, located at 358 E 149th Street, Bronx, NY 10455.

19. Maximus was Plaintiff's "employer" within the meaning of Title VII, ADA, NYSHRL and NYCHRL.

20. Maximus is an outsourcing company that provides business process services to government health and human services agencies in the United States.

21. The Bartech Group, Inc. is a foreign corporation organized and existing under and by virtue of the laws of the State of Michigan.

22. The Bartech Group, Inc.'s headquarters are located at 27777 Franklin Road, Suite 600 Southfield, Michigan, 48034.

23. The Bartech Group, Inc. was Plaintiff's "employer" within the meaning of NYSHRL and NYCHRL.

24. The Bartech Group, Inc. is a staffing agency.

25. Corestaff is an affiliate company of the Bartech Group, Inc.

26. Corporate Employment Resources, Inc. is a foreign corporation organized and existing under and by virtue of the laws of the State of Delaware.

27. Corporate Employment Resources, Inc. was and is a foreign business corporation authorized to conduct business in the State of New York.

28. Corporate Employment Resources, Inc. has a registered agent, Corporation Service Company, located at 80 State Street, Albany, New York, 12207-2543.

29. Corporate Employment Resources, Inc. principal executive office is located at 3475 Lenox Road NE, SUITE 450, Atlanta, GA 30326.

30. Corporate Employment Resources, Inc. was Plaintiff's "employer" within the meaning of NYSHRL and NYCHRL.

31. During the entirety of Plaintiff's employment with the Defendants, Plaintiff's paychecks were issued by Corporate Employment Resources, Inc.

32. Although Plaintiff's paychecks were issued by Corporate Employment Resources, Inc., Corestaff, the Bartech Group, Inc. and Maximus controlled aspects of Plaintiff's employment.

33. Corporate Employment Resources, Inc. provides temporary staffing services.

34. Plaintiff's assignment with Maximus was contracted through Corestaff, the Bartech Group, Inc. and/or Corporate Employment Resources, Inc.

35. Corestaff, the Bartech Group, Inc. and Corporate Employment Resources, Inc. handled the onboarding and payrolling responsibilities for Plaintiff during her assignment at Maximus.

36. Corestaff, the Bartech Group, Inc., Corporate Employment Resources, Inc. and Maximus jointly controlled the aspects of Plaintiff's employment, such as compensation, terms, conditions, privileges of employment.

37. Corestaff, the Bartech Group, Inc., Corporate Employment Resources, Inc. and Maximus acted as a "joint employer" with regard to Plaintiff's employment.

## STATEMENT OF FACTS

38. On December 30, 2019, Plaintiff commenced her employment with the Defendants.

39. Plaintiff's employment with Maximus was contracted through Corestaff, the Bartech Group, Inc. and/or Corporate Employment Resources, Inc.

40. Plaintiff was recruited to work at Maximus by Corestaff, the Bartech Group, Inc. and/or Corporate Employment Resources, Inc. via indeed.com - an employment website.

41. At first, Plaintiff was interviewed by Corestaff via phone.

42. Then, Plaintiff appeared for an in-person interview with China Panion, manager at Maximus, and a female employee of Maximus (name currently unknown).

43. The interview was conducted at Maximus, located at 358 East 149th Street, Bronx, New York, 10455.

44. Plaintiff was employed by the Defendants as a Lead Service Coordinator.

45. In that role, Plaintiff conducted workshops on resume writing, work ethics, presentation, proper attire; created resumes; referred clients to various schools; provided guidance in how to obtain CDL license, GED, take ELS classes, *etc*.

46. During her employment with the Defendants, Plaintiff earned $20.67 per hour.

47. During her employment with the Defendants, Plaintiff worked Monday through Friday from 8 a.m. to 5:00 p.m.

48. From December 30, 2019 to March 17, 2020, Plaintiff worked at 358 East 149th Street, Bronx, New York, 10455.

49. During her employment with the Defendants, Plaintiff reported to China Panion, the manager at Maximus.

50. During her employment with the Defendants, Plaintiff reported to Elizabeth Buenzli, the National Account Manager at Corestaff.

51. From December 30, 2019 to March 17, 2020, every Tuesday, Plaintiff had a sit down meeting with China Panion, the manager at Maximus, during which she gave Plaintiff directions, assignments, and discussed her work progress and goals.

52. During the entirety of Plaintiff's employment with the Defendants, Plaintiff was a stellar employee. She satisfactory performed her duties and responsibilities, and received a positive feedback regarding her work performance.

53. On or about March 17, 2020, due to Covid-19, Plaintiff, along with other Maximus' employees, started working remotely.

54. In that regard, Plaintiff signed the Remote Work Agreement with Maximus.

55. Although Plaintiff was provided with a desktop and headsets, she was never reimbursed for the internet usage.

56. In or around June 2020, Plaintiff's work hours were reduced to: Monday to Friday, 12 p.m. do 5:00 p.m. Plaintiff continued to attend the zoom meetings in the mornings.

57. On or about August 2, 2020, Plaintiff learned of her pregnancy.

58. In or around August 2020, Plaintiff notified Elizabeth Buenzli, the National Account Manager at Corestaff, and China Panion, the manager at Maximus, about her pregnancy.

59. Plaintiff promptly notified China Panion and Elizabeth Buenzli about her upcoming doctor's appointments related to her pregnancy.

60. Because of her pregnancy, Plaintiff started experiencing sporadic nausea, headaches, stomach sickness, severe back pain and abdominal pressure. Said pregnancy-related impairments substantially limited Plaintiff's major life activities and the operation of Plaintiff's major bodily functions *e.g.* digestive, genitourinary, and musculoskeletal, *etc*.

61. Despite her pregnancy, Plaintiff was able to do the essential duties of her job as the Lead Service Coordinator.

62. In or around August 2020, due to a severe back pain caused by her pregnancy, Plaintiff requested from China Panion if she could have a laptop, which would reasonably accommodate her pregnancy by allowing her to do the essential duties of her job from a recliner chair or a couch.

63. Maximus had the financial resources to provide laptops to other non-pregnant employees, similarly situated to Plaintiff, such as Paris (last name currently unknown), Jarlene Simon, Rickey (last name currently unknown), Loni (last name currently unknown) and so on.

64. Maximus denied Plaintiff's request for a reasonable accommodation related to her pregnancy, even though granting such accommodation would not create an undue hardship for Maximus.

65. On or about September 4, 2020, Elizabeth Buenzli contacted Plaintiff and informed her that the Defendants were concerned that she was **"a potential liability"** to the them **"due to her pregnancy"**.

66. No single act can more quickly to alter the conditions of employment and create a hostile work environment than telling a pregnant woman, such as Plaintiff, that she is a potential liability to the company due to her pregnancy.

67. Elizabeth Buenzli requested Plaintiff to provide a doctor's note related to her pregnancy.

68. Plaintiff promptly cooperated in providing medical information that was necessary to verify her pregnancy.

69. Plaintiff informed Elizabeth Buenzli that the earliest availability for her next doctor's appointment was on September 17, 2020, and that she would be able to obtain the doctor's note then.

70. Plaintiff further explained that due to Covid-19, her doctor's hours were limited, and she was no longer able to just walk-in to request a doctor's note, and that she had to make a doctor's appointment in advance.

71. Even though Plaintiff was not prevented by her pregnancy from performing the material duties of her job as a Lead Service Coordinator, the Defendants, through their agents and employees, took Plaintiff off the schedule.

72. By taking Plaintiff off the schedule, the Defendants took an adverse employment action against Plaintiff, depriving her of an opportunity to earn additional income while she was pregnant.

73. When Maximus' employees inquired from China Panion why Plaintiff was not working, she falsely advised them that Plaintiff was "Missing in Action", even though she knew that Plaintiff was taken off the schedule by the Defendants while she was obtaining the doctor's note related to her pregnancy.

74. On September 17, 2020, as requested by the Defendants, Plaintiff produced a doctor's note to Elizabeth Buenzli and China Panion.

75. The doctor's note indicated as follows:

> "Ms. Ordonez carries a high-risk pregnancy… this letter is written in support of Yosly continued **work** from **home** and any accommodations that can be made to facilitate this recommendation would be greatly appreciated"

76. The same day, Elizabeth Buenzli called Plaintiff to inform her that the doctor's note that she had provided to the Defendants was "insufficient" and that Plaintiff had to provide a different doctor's note before she could return to work.

77. The doctor's note Plaintiff had provided to the Defendants contained a phone number and a note from her doctor, encouraging them to call the doctor's office if any additional information was required.

78. Although the Defendants had Plaintiff's consent to contact her doctor regarding the above-referenced note, none of the Defendants made an attempt to contact Plaintiff's doctor.

79. A few days later, during a telephone conversation with Plaintiff, Elizabeth Buenzli reiterated that Maximus would not allow her to work with the doctor's note that she had provided, and that in order for her to work she would need to provide a different doctor's note.

80. During said phone conversation, Plaintiff complained to Elizabeth Buenzli about the Defendants discriminating against her because of her pregnancy, but her complaints fell on deaf ears.

81. The Defendants, through their agents and employees, unlawfully discriminated against Plaintiff because of her pregnancy, by denying her an opportunity to continue performing the essential duties of her job, even though she was not prevented from doing so by her pregnancy.

82. After Plaintiff disclosed her pregnancy to the Defendants, Maximus removed Plaintiff from Skype contact list.

83. After Plaintiff disclosed her pregnancy to the Defendants, Maximus removed Plaintiff from the morning work meetings on Zoom.

84. After Plaintiff disclosed her pregnancy to the Defendants, Maximus removed Plaintiff from Mploy, a recruiting app.

85. After Plaintiff disclosed her pregnancy to the Defendants, Maximus removed Plaintiff from the New York City Way.

86. After Plaintiff disclosed her pregnancy to the Defendants, Maximus removed Plaintiff from the group work chat. Instead, a new group work chat was created, which Plaintiff was no longer a part of.

87. By removing Plaintiff from work-related chats, meetings and apps, the Defendants unlawfully discriminated against Plaintiff in terms, conditions and privileges of employment because of her pregnancy.

88. Because Plaintiff was removed from the Zoom calls, she was no longer able to keep track of any work-related events, posted jobs or workshops, *etc.*

89. On October 8, 2020, in further discrimination and retaliation against Plaintiff, Elizabeth Buenzli informed Plaintiff that her employment with Maximus was terminated.

90. Elizabeth Buenzlui falsely accused Plaintiff in failing to provide a doctor's note clearing her to return work, even though Plaintiff had previously provided the doctor's note to the Defendants on September 17, 2020 via text messages and email.

91. After Plaintiff's numerous requests, she finally received a written notice of her termination.

92. Although Plaintiff was informed about her termination on October 8, 2020, the termination letter, dated October 19, 2020, issued by Corestaff, falsely indicated that Plaintiff's employment ended on September 6, 2020.

93. Corestaff back-dated Plaintiff's termination in order to cover up the Defendants' discriminatory practices.

94. The Defendants unlawfully terminated Plaintiff because of her pregnancy.

95. The Defendants unlawfully terminated Plaintiff because of her pregnancy, even though other factors may have motivated the Defendants to terminate Plaintiff.

96. As a result of the acts and conduct complained of herein, Plaintiff has suffered and will continue to suffer the loss of income, the loss of a salary, bonuses, benefits, and other compensation which such employment entails, and Plaintiff has also suffered future pecuniary losses, emotional pain, suffering inconvenience, loss of enjoyment of life, and other non-pecuniary losses. Plaintiff has further experienced severe emotional and physical distress.

97. As a result of the above, Plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower Courts.

98. As Defendants' conduct has been willful, reckless, outrageous, intentional, and/or malicious, Plaintiff also demands punitive damages in an amount which exceeds the jurisdictional limits of all lower Courts.

## FIRST CAUSE OF ACTION
### Discrimination in Violation of Title VII
### (Against Corestaff and Maximus)

99. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

100. Pursuant to 42 USCS § 2000e-2(a)(1), it shall be an unlawful employment practice for an employer to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's sex.

101. Under 42 USCS § 2000e (k), the terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy.

102. Pursuant to 42 USCS § 2000e (m), an unlawful employment practice is established when the complaining party demonstrates that sex was a motivating factor for any employment practice, even though other factors also motivated the practice.

103. The Defendants, through their agents and employees, unlawfully discriminated against Plaintiff because of her sex (pregnancy) by unlawfully taking her off the schedule, removing her from all work-related chats/apps, and terminating her employment. As a direct and proximate result of these Defendants' unlawful employment practices, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## SECOND CAUSE OF ACTION
### Hostile Work Environment in Violation of Title VII
### (Against Corestaff and Maximus)

104. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

105. Pursuant to 42 USCS § 2000e-2(a)(1), it shall be an unlawful employment practice for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of employment, because of such individual's sex (pregnancy).

106. The Defendants, through their agents and employees, unlawfully subjected Plaintiff to a hostile work environment because of her pregnancy by telling her that she is a potential liability to the company due to her pregnancy. As a direct and proximate result of these

Defendants' unlawful employment practices, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### THIRD CAUSE OF ACTION
**Retaliation in Violation of Title VII**
**(Against Corestaff and Maximus)**

107. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

108. Pursuant to 42 USCS § 2000e-3, it shall be an unlawful employment practice for an employer to discriminate against any of his employees, or to discriminate against any individual because she has opposed any practice made an unlawful employment practice.

109. The Defendants, through their agents and employees, unlawfully retaliated against Plaintiff for opposing the Defendants' discriminatory practices by terminating her employment. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

### FOURTH CAUSE OF ACTION
**Discriminating in Violation of ADA**
**(Against Corestaff and Maximus)**

110. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

111. The Defendants are a "covered entity" within the meaning of 42 USCA § 12111.

112. Pursuant to 42 USCS § 12102 (a) (1) (a), the term "disability" means, with respect to an individual – a physical or mental impairment that substantially limits one or more major life activities of such individual. A pregnancy-related impairment that substantially limits a major life activity is a disability.

14

113. Pursuant to 42 USCS § 12112 (a), no covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to discharge of employees, other terms, conditions, and privileges of employment.

114. Pursuant to 42 USCS § 12112 (5) (a), the term "discriminate against a qualified individual on the basis of disability" includes not making reasonable accommodations to known physical of an otherwise qualified individual with a disability who is an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity.

115. The Defendants unlawfully discriminated against Plaintiff because of her disability (pregnancy) by denying her request for a reasonable accommodation, taking her off the schedule and terminating her employment. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**FIFTH CAUSE OF ACTION**
**Retaliation in Violation of ADA**
**(Against Corestaff and Maximus)**

116. Plaintiff repeats, realleges, and restates each and every paragraph above as if said paragraphs were more fully set forth herein at length.

117. Pursuant to 42 USCS § 1203 (a), no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by ADA.

118. The Defendants unlawfully retaliated against Plaintiff for opposing the Defendants' unlawful employment discrimination practices. As a direct and proximate result of the Defendants'

unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which he is entitled to an award of monetary damages and other relief.

**SIXTH CAUSE OF ACTION**
**Discrimination in Violation of NYSHRL**
**(Against All Defendants)**

119. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

120. The NYSHRL §296 (1) provides that it shall be an unlawful discriminatory practice for an employer because of an individual's sex, disability and familial status, to discharge from employment such individual, or to discriminate against such individual in compensation or in terms, conditions or privileges of employment.

121. The NYSHRL §296 (3)(a) provides that it shall be an unlawful discriminatory practice for an employer to refuse to provide reasonable accommodations to the known disabilities, or pregnancy-related conditions, of an employee in connection with a job or occupation held.

122. Pursuant to NYSHRL §292 (5), the term "employer" shall include all employers within the state.

123. Pursuant to NYSHRL §292 (21-f), term "pregnancy-related condition" means a medical condition related to pregnancy or childbirth that inhibits the exercise of a normal bodily function.

124. The Defendants unlawfully discriminated against Plaintiff on the basis of her temporary disability (pregnancy), sex and familial status by denying her request for a reasonable accommodation, taking her off the schedule, and terminating her employment.

125. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

### SEVENTH CAUSE OF ACTION
**Hostile Work Environment in violation of NYSHRL**
**(Against All Defendants)**

126. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

127. Pursuant to NYSHRL § 296 (1) (h) it shall be an unlawful discriminatory practice for an employer to subject any individual to harassment because of an individual's sex, disability or familiar status, or because the individual has opposed any practices forbidden under this article or because the individual has filed a complaint, regardless of whether such harassment would be considered severe or pervasive under precedent applied to harassment claims. Such harassment is an unlawful discriminatory practice when it subjects an individual to inferior terms, conditions or privileges of employment because of the individual's membership in one or more of these protected categories. The fact that such individual did not make a complaint about the harassment to such employer shall not be determinative of whether such employer, licensing agency, employment agency or labor organization shall be liable.

128. Plaintiff's situation at her job was intolerable as a result of the discrimination by the Defendants to which she was subjected, that no reasonable person in Plaintiff's position could be expected to continue working under these conditions.

129. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**EIGHTH CAUSE OF ACTION**
**Retaliation in Violation of NYSHRL**

**(Against All Defendants)**

130. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

131. The NYSHRL §296 (7) provides that it shall be unlawful discriminatory practice for any person to retaliate or discriminate against any person because she has opposed any practices forbidden by Human Rights Law.

132. The Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for opposing the Defendants' discriminatory practices by terminating her employment. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**NINTH CAUSE OF ACTION**
**Discrimination in Violation of NYCHRL**
**(Against All Defendants)**

133. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

134. Pursuant to NYCHRL § 8-107 (1) it shall be an unlawful discriminatory practice:  (a) For an employer or an employee or agent thereof, because of the actual or perceived gender, disability, of any person:  (2) To refuse to hire or employ or to bar or to discharge from

18

employment such person; or (3) To discriminate against such person in compensation or in terms, conditions or privileges of employment.

135. Pursuant to NYCHRL § 8-107 (22) (a) it shall be an unlawful discriminatory practice for an employer to refuse to provide a reasonable accommodation, to the needs of an employee for the employee's pregnancy that will allow the employee to perform the essential requisites of the job, provided that such employee's pregnancy is known by the employer.

136. The Defendants unlawfully discriminated against Plaintiff by denying her request for a reasonable accommodation, taking her off the schedule, and terminating her employment because of her gender and disability (pregnancy).

137. As a direct and proximate result of the Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer harm for which they are entitled to an award of monetary damages and other relief.

## TENTH CAUSE OF ACTION
### Hostile Work Environment in violation of NYCHRL
### (Against All Defendants)

138. Plaintiff hereby repeats and realleges the preceding paragraphs as though they were fully set forth herein.

139. Pursuant to NYCHRL § 8-107 (1) it shall be an unlawful discriminatory practice:  (a) For an employer or an employee or agent thereof, because of the actual or perceived gender, disability, of any person:  (3) to discriminate against such person in terms, conditions or privileges of employment.

140. Plaintiff's situation at her job was intolerable as a result of the discrimination by the Defendants to which they were subjected, and no reasonable person in Plaintiff's position could be expected to continue working under these conditions.

141. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

## ELEVENTH CAUSE OF ACTION
### Retaliation in Violation of NYCHRL

### (Against All Defendants)

142. Plaintiff hereby repeats and re-alleges each and every allegation in all of the preceding paragraphs as if fully set forth herein.

143. Pursuant to NYCHRL § 8-107 (7) it shall be an unlawful discriminatory practice for any person to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under NYCHRL. The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment, or in a materially adverse change in the terms and conditions of employment, provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity.

144. The Defendants engaged in an unlawful discriminatory practice by retaliating against the Plaintiff for opposing the Defendants' discriminatory practices. As a direct and proximate result of the Defendants' unlawful and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of monetary damages and other relief.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.  A declaratory judgment that the practices complained of herein are unlawful under applicable federal, state and city law;

b.  An injunction against the Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendants, as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the Title VII, and awarding Plaintiff a recovery for damages sustained;

d.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the ADA, and awarding Plaintiff a recovery for damages sustained;

e.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the NYSHRL, and awarding Plaintiff a recovery for damages sustained;

f.  Declaring that the Defendants engaged in unlawful employment practices prohibited by the NYCHRL, and awarding Plaintiff a recovery for damages sustained;

g.  Declaring that the Defendants discriminated against and retaliated against and terminated Plaintiff on the basis of her sex, disability and familial status – pregnancy, and awarding Plaintiff a recovery for damages sustained;

h.  Awarding damages to Plaintiff, retroactive to the date of her termination, for all lost wages and benefits resulting from the Defendants' unlawful employment practices in an amount that exceeds the jurisdictional limit of all lower courts;

i.   Awarding Plaintiff compensatory damages for her mental and emotional injuries in an amount that exceeds the jurisdictional limit of all lower courts;

j.   An award of prejudgment and post-judgment interest;

k.   An award of punitive damages where applicable;

l.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees;

m.  Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the FRCP, Plaintiff demands a trial by jury.

Dated: August 20, 2021
      New York, New York

Respectfully submitted,

Akin Law Group PLLC

*/s/ Olena Tatura*
_____

Olena Tatura, Esq.
45 Broadway, Suite 1420
New York, NY 10006
(212) 825-1400
olena@akinlaws.com
*Counsel for Plaintiff*
